J. S93002/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

SPECIALTY CLAIMS SERVICES, INC.,     :     IN THE SUPERIOR COURT OF
    :         PENNSYLVANIA
        APPELLANT     :
    :
        v.     :
    :
    :
LIBERTY ASSET RECOVERY, LLC     :     No. 1391 EDA 2016
    :

Appeal from the Judgment Entered June 22, 2016
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2013-10768-IR

BEFORE: DUBOW, SOLANO AND PLATT,[*] JJ.

MEMORANDUM BY DUBOW, J.:             **FILED FEBRUARY 22, 2017**

Appellant, Specialty Claims Services, Inc., appeals from the June 22, 2016 entry of Judgment in favor of Liberty Asset Recovery, LLC ("Appellee") following a bench trial. We affirm.

The facts and procedural history of this matter are as follows:

> [Appellant] is a corporation organized under the laws of the Commonwealth of Pennsylvania. [Appellant] is a third-party claims administrator for insurers, insureds[,] and self-insureds. [Appellant's] services include administering worker's compensation claims on behalf of client-employers who are self-insureds or who maintain a significant self-insured retention.
>
> [Appellee] is a limited liability company organized under the laws of the Commonwealth[,] which operates to "re-

---

[*] Retired Senior Judge Assigned to the Superior Court.

price" worker's compensation medical bills. Medical bill "re-pricing" is a fancy term to describe the reduction of medical bills, specifically hospital bills, either by negotiation or by imposition of the workers compensation re-pricing program.

On October 25, 2011, [Appellant] retained [Appellee] to perform re-pricing services. Under the contract [("Service Agreement")] dated October 25, 2011, [Appellant] referred cases to [Appellee]. [Appellee] then attempted to "re-price" the hospital bills. If [Appellee] was successful, [Appellant] paid [Appellee] 25% of the savings under the terms of the contract. Simply put, if [Appellee] could reduce the hospital bill by $100.00, then [Appellant] was to pay [Appellee] $25.00 as a fee. However, as a practical matter, using the example above, [Appellee] simply returned to [Appellant] $75.00.[1]

The [Service Agreement] also contains a clause which provided that if the "re-pricing" was challenged and "**determined administratively to be incorrect**, [Appellee] will repay [Appellant] its fee." *See*, [Appellant's] Exhibit P-1 p. 3. In short, if the hospital challenged the $100.00 bill reduction, using the above example, and it was "determined administratively" to be wrong, [Appellee] was required to repay [Appellant] the $25.00. The [Service Agreement] further states that if the determination of the re-pricing was "found to be partially correct and partially incorrect, [Appellee] will refund the proportionate amount of fee which corresponds with 20 percent of the additional payment which is to be made."

The [Service Agreement] also addresses termination and each party's continuing duties. The [Service Agreement] could be terminated by either party following thirty-days['] written notice; or, by any party immediately if one party was in material breach. Further, [Appellant] could not

---

[1] The Service Agreement provides that "[u]pon receipt of a payment recommendation by [Appellee,] [Appellant] will make payment to the provider within three business days and will pay the fee of [Appellee] in the amount of 25 percent of savings below billed charges." Service Agreement, 10/25/11, at 3.

terminate the [Service Agreement] "after [Appellee] provided its report." Even if the [Service Agreement] was terminated, [Appellee] agreed to "continue to adhere to this contract relative to all pending matters . . ." and [Appellant] was to "continue to adhere to all covenants with respect to all work in progress." *See*, [Appellant's] Exhibit, P-1, p. 5.

On August 2, 2013, [Appellant] sent a letter to [Appellee,] which stated it was "exercising its option to cancel the contract in accordance with page 5, paragraph 3. . . ." *See*, [Appellant's] Exhibit P-2. Although not stated clearly, it appears [Appellant] was giving [Appellee] thirty[-]day[']s notice of its intention to cancel the [Service Agreement]. Thus, the [Service Agreement] was no longer in effect as of September 1, 2013.

Trial Ct. Op., 12/18/15, at 1-3 (emphasis in original).

Appellant filed a Complaint on November 1, 2013, asserting breach of contract and unjust enrichment claims. Appellant alleged that, under the terms of the Service Agreement, Appellee was obligated to continue to handle matters that were outstanding at the time of the effective date of the termination of the Service Agreement, *i.e.* September 1, 2013, and that Appellee breached the terms of the Service Agreement by refusing to defend its determinations in matters for which Appellant had already paid fees.[2] Appellant alleged that, owing to Appellee's failure to perform, Appellant had to resolve these pending matters on its own, without the advice, expertise, and support Appellee was obligated to provide. Appellant sought the return

---

[2] Appellant alleged in its Complaint that there were at least ten such matters; however, at trial, Appellant introduced evidence of only nine matters.

of $24,940.27, representing fees it prepaid to Appellee, and additional amounts Appellant paid in the settlements of the outstanding matters.

On November 1, 2013, Appellant filed an Emergency Motion for a Special Injunction, Temporary Restraining Order, and Preliminary Objection alleging that Appellee's "refusal to honor its contractual obligations . . . has caused and is causing irreparable harm to [Appellant's] business reputation, client relationships[,] and the relationships between [Appellant's] Workers Compensation Clients and their employees and medical providers[,]" and seeking an Order directing Appellee to, *inter alia*, immediately resume the performance of its alleged contractual obligations to Appellant. Motion, 11/1/13, at 4-6. On November 6, 2013, the trial court denied Appellant's Motion after a hearing.

Appellee filed Preliminary Objections to Appellant's Complaint on March 20, 2014, which the trial court overruled on June 16, 2014. At the conclusion of discovery, the court held a bench trial on December 10, 2015.

At trial, Appellant presented the testimony of William Helmig, Appellant's Director of Operations. Relevant to the instant matter, Helmig testified that, in instances where Appellee negotiated and settled a disputed payment with a medical provider, Appellee refunded a proportional amount of the fee prepaid to it by Appellant. N.T, 12/10/15, at 26-27. Appellee did not present any evidence.

At the close of Appellant's case, Appellee made an oral Motion for Compulsory Nonsuit, which the trial court denied. On December 18, 2015, the court issued an Order and Opinion finding in favor of Appellee. The court essentially concluded that Appellee had not breached the Service Agreement because, of the nine matters alleged by Appellant to be outstanding at the time Appellant terminated the Service Agreement, none of them had been "determined administratively," but rather, they had all been "settled" by Appellant. Trial Ct. Op. at 5. Therefore, the court concluded that Appellee had not breached the Service Agreement, and that Appellant was, therefore, not entitled to a repayment of fees it prepaid to Appellee. *Id.*

Appellant filed a timely Post-Trial Motion on January 4, 2016, in which it sought either a judgment in its favor, or, in the alternative, a new trial. On April 1, 2016, the trial court denied Appellant's Post-Trial Motion. Appellant filed a timely Notice of Appeal on May 2, 2016.[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

> 1. Did the trial court err in denying [Appellant's] Motion for Post[-]Trial Relief when it concluded that the *only* circumstances under which [Appellant] was entitled to a return of prepaid fees was where [Appellee's] payment recommendations were "determined administratively to be

---

[3] Appellant filed a *Praecipe* for Entry of Judgment on June 22, 2016, pursuant to this Court's Order. **Sovereign Bank v. Valentino**, 914 A.2d 415, 419 n.6 (Pa. Super. 2006) (citation omitted) (noting "[a] final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction").

incorrect" despite undisputed evidence that whenever a disputed matter was ultimately resolved with the payment of additional amounts by [Appellant]—whether by administrative order or pursuant to settlement—[Appellee] was required to return, and did in fact return, the portion of its fees corresponding to the additional amount paid?

2. Did the trial court err in denying [Appellant's] Motion for Post[-]Trial Relief when it concluded that it was [Appellant] who breached the Service Agreement by "bypassing the terms of the contract, settling the pending disputes, and then seeking to recover from [Appellee] a portion of the fee" despite undisputed evidence admitted at trial[] that [Appellant] was forced to resolve the matters without [Appellee's] assistance after [Appellee] breached its clear contractual obligations to handle the pending matters even after termination of the contract?

Appellant's Brief at 4-5.

Appellant's questions challenge the trial court's findings and conclusions following a non-jury trial. Our standard of review of such claims pays substantial deference to the trial court as it acts in the role of factfinder. *See Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 413-14 (Pa. Super. 2004).

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was

> manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

*J.J. DeLuca Co. v. Toll Naval Assocs.*, 56 A.3d 402, 410 (Pa. Super. 2012) (citations and quotation marks omitted).

Appellant's questions raised on appeal also challenge the trial court's interpretation of the Service Agreement. "Since contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope is plenary." *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 96 (Pa. Super. 2015) (citation and quotation marks omitted). The goal of contract interpretation is to "ascertain the intent of the parties." *Lenau v. Co-eXprise, Inc.*, 102 A.3d 423, 429 (Pa. Super. 2014).

> In the cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.

*Id.* at 429 (internal citations omitted). In the absence of any ambiguity in the terms of a contract, a court is not permitted to consider parol, or any other extrinsic evidence, to ascertain the intent of the parties. *Id.*

In its first issue, Appellant claims that the trial court erred in concluding that the only circumstances in which the Service Agreement required Appellee to return to Appellant a portion of the amount prepaid to Appellee is where Appellee's payment to medical service providers was "determined administratively to be incorrect." Appellant's Brief at 12-13.

Appellant argues that Appellee was also required to refund the prepaid amount in any circumstance where a disputed matter was ultimately resolved by Appellant's payment of an additional amount to a provider, most commonly by settlement of the dispute. *Id.* at 13-14. In those instances, Appellee was required to, and did in fact, return the portion of its prepaid fee corresponding to the additional amount paid. *Id.* Appellant concedes the Service Agreement does not contain language to this effect, but rather notes that the Service Agreement does not explicitly limit the return of prepaid fees only in the case where Appellee's recommendation was "determined administratively to be incorrect."[4] *Id.* at 13. Appellant argues that "the fact that [] the Service Agreement did not list other circumstances does **not** mean that there weren't other situations where [Appellee] was required to return a portion of prepaid fees." *Id.* (emphasis in original).

With respect to the return of prepaid fees, the Service Agreement provides, in relevant part, as follows:

> If [Appellee's] determination is timely challenged and **determined administratively to be incorrect**, at the expiration of the period of appeal from a **final administrative or court determination**, [Appellee] will repay [Appellant] its fee.

Service Agreement, 10/25/11, at 3.

---

[4] It bears noting that Appellant does not argue that the language of the Service Agreement was in any way ambiguous.

The trial court found that the above-quoted language of the Service Agreement was clear and unambiguous in defining the circumstances under which Appellant was entitled to repayment of fees—where Appellee's determination was determined administratively to be incorrect following the expiration of the time to appeal from a final administrative or court determination.[5]  Trial Ct. Op., 6/13/16, at 6; Trial Ct. Op. 12/18/18, at 3-5. Having so concluded, the trial court analyzed the language of the Service Agreement, finding that, in the context of the Service Agreement, "determined administratively" means "an official decision by an administrative body applying worker's compensation law."  Trial Ct. Op., 12/18/15, at 5.

The court concluded this "condition precedent" had not occurred, and dismissed Appellant's argument that it was entitled to repayment of prepaid fees in circumstances other than those outlined in the Service Agreement as

---

[5] The court noted also that the Service Agreement contained an integration clause, which limited the court to resolving this dispute based on the terms contained in the Service Agreement.  The integration clause provides as follows:

> This Agreement is the entire Agreement between the parties.  There are no other Agreements.  Any modification or change in this Agreement **must** be set forth in writing.  Any representations made by any prior party to this agreement being signed is not binding, to be relied upon or be any part of this Agreement.

Service Agreement at 6 (emphasis added).

"contrary to logic and the perceived intent of the parties." Trial Ct. Op., 6/13/16, at 7. The court specifically found that "[i]f the parties contemplated more than a single circumstance in which [Appellant] could recover fees, the Service Agreement would have provided for such." *Id.* It concluded that if the parties had intended for Appellee to return fees in an "indefinite number of circumstances," the Service Agreement would not have specified a single condition precedent to the return of fees. *Id.*

Our *de novo* review of the Service Agreement confirms the trial court's conclusion. By its plain terms, the Service Agreement limits the circumstances in which Appellant was entitled to a return of prepaid fees to those in which Appellee's recommendation of the amounts owed medical providers were determined administratively to be incorrect. Because the terms of the Service Agreement are clear and unambiguous, we may not consider extrinsic evidence, such as Helmig's testimony pertaining to the course of practice between the parties, in order to expand the circumstances as Appellant suggests to find that Appellee has breached the Service Agreement. Accordingly, Appellant is not entitled to relief on this issue.

In its second issue, Appellant claims that the trial court found that **Appellant** was in "breach of the Service Agreement" when it concluded that Appellant had "bypass[ed] the terms of the contract, settle[d] the pending disputes, and then [sought] to recover from [Appellee] a portion of the fees." Appellant's Brief at 15 (citing Trial Ct. Op., 12/18/15, at 5).

Appellant argues that it did not "bypass" the terms of the Service Agreement. *Id.* at 18. Rather, it avers that, in an effort to protect its business interests, and following the denial of injunctive relief, Appellant negotiated resolutions to the pending matters on its own. *Id.* Appellant argues that the trial court's decision "permits [Appellee] to benefit from its own breach of the Service Agreement" by allowing Appellee to "retain prepaid fees for required services that it refused to perform." *Id.*

With respect to this claim, the trial court opined that Appellant misconstrued its holding, because it did not, in fact, find that Appellant breached the Service Agreement. The trial court noted that it "determined that [Appellant] was simply not entitled to repayment because the condition precedent, as explained above, had not been triggered requiring [Appellee] to refund a portion of its fees." Trial Ct. Op., 6/13/16, at 7.

We agree with the trial court that this sentence amounted to nothing more than a further explanation to hold that Appellee did not breach the Service Agreement. Accordingly, no relief is due.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2017

- 11 -