J-S55023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FRED J. SENTNER AND MARY JO SENTNER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT A. BEALL, INC., D/B/A MR. ROOTER OF PITTSBURGH | : | No. 112 WDA 2020 |
| Appellants | : | |

Appeal from the Judgment Entered December 30, 2019
In the Court of Common Pleas of Washington County Civil Division at
No(s):  No. 2015-6440

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:              **FILED:  April 27, 2021**

Robert A. Beall, Inc., D/B/A Mr. Rooter of Pittsburgh (Appellant) appeals from the judgment entered in favor of Fred J. Sentner and Mary Jo Sentner (Appellees) in the Washington County Court of Common Pleas.  Appellant presents four claims challenging the trial court's award of attorneys' fees to Appellees under the Unfair Trade Practices and Consumer Protection Law[1] (UTPCPL).  We affirm, but remand for the trial court to add the jury's non-UTPCPL verdict to the December 30, 2019, UTPCPL judgment.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 73 P.S. §§ 201-1 to 201-9.3.

## I. Facts & Procedural History

The trial court summarized the underlying facts, which are not disputed on appeal:

> [Appellees] were an elderly couple in their late seventies who have lived in their home for more than [40] years. [In April of 2015, a]fter experiencing a back-up of water in their basement, [Appellees] engaged [Appellant], a professional plumbing company, to examine and fix the problem. [Appellees] were enticed to utilize [Appellant] from an ad in the phonebook touting a $99 coupon to unclog a drain. Representatives of [Appellant] came to their home and inspected the pipe with a camera. [Appellees] were immediately told that the pipe was broken and were also informed that the slope from the home to the sewer connection was too shallow and that the entire line would need to be replaced. [Appellees] authorized an emergency replacement of the broken pipe for $3,500.00; they did not agree to replace the longer connecting pipe to fix the alleged slope problem. After the pipe was dug up and replaced, [Appellee Fred] Sentner observed that the old pipe was not broken. He complained to the employee of [Appellant] and demanded his money back. They refused and [Appellees] asked them to leave. [Appellees] have not had the line replaced to fix the alleged slope problem and have not experienced any problems at all.

Trial Ct. Op., 6/1/20, at 2.

On October 9, 2015, Appellees filed the underlying complaint against Appellant, averring negligence, fraudulent misrepresentation, breach of contract, and violations of the UPTCPL. The three **non**-UTPCPL claims proceeded to a bifurcated jury trial on May 13, 2019. As the trial court pointed out, at this trial Appellees made no claim for, and presented no evidence of, their attorneys' fees. Trial Ct. Op., 6/1/20, at 6, 9, 11-12. On May 16, 2019, the jury returned a verdict in favor of Appellees on their negligence and

J-S55023-20

fraudulent misrepresentation claims, but found Appellant not liable for breach of contract.

The verdict slip provided to the jury stated:

State the actual amount of damages incurred by [Appellees] as a result of [Appellant's] breach of contract or violation of the law.

$_____.

Verdict & Interrogatories to Jury, 5/17/19, at 2.[2]  On the blank line for the money amount, the jury handwrote: "3,500.00 downpayment."  ***Id.***  Furthermore, under the line, the jury handwrote:

$ money for concrete
$ legal fees for 4 years

***Id.***  No amounts, however, were provided for these notations.  The jury also awarded Appellees $5,000 in punitive damages.  ***Id.***

The trial court then separately considered Appellee's UTPCPL claim:[3]

---

[2] The verdict was announced in open court on May 16, 2019.  However, for ease of review, in citing the verdict slip, we use the date of the "filed' stamp on the face of the verdict slip — May 17th.

[3] The trial court reasoned that a plaintiff has no right to a jury trial on a UTPCPL claim, citing ***Krishnan v. Cutler Group, Inc.***, 171 A.3d 856 (Pa. Super. 2017).  Trial Ct. Op., 6/1/20, at 5.  However, the relevant statement in ***Krishnan*** appeared in a three-paragraph quotation of the trial court's opinion, which also addressed other issues.  ***See Krishnan***, 171 A.3d at 863, *quoting* Trial Ct. Op. at 1-2 ("There being no right to a jury trial under the UTPCPL, the court scheduled the jury trial on [Appellees'] common law claims to begin[.]").  The remainder of the ***Krishnan*** opinion presented no discussion on the accuracy of this statement.

- 3 -

[T]his Court, after the jury trial was complete, decided the claim of UTPCPL based on the evidence presented at the jury trial. On May 23, 2019, the Court found [Appellees] established that [Appellant] violated UTPCPL 73 P.S. § 201-2(4)(xv) and (xxi)[4] and awarded damages of $3,405 ($3,500 paid to Appellant less $95.00 that it should have cost). The Court [additionally] awarded treble damages of $10,215.00 pursuant to § 201-9.2 of the UTPCPL.

The Court [further] found [Appellees] were entitled to recover reasonable attorneys' fees and scheduled a hearing providing [Appellees] with the opportunity to present the attorneys' bills and for [Appellant] to scrutinize such evidence. The attorney[s'] bills had not been presented at the jury trial. The Court set forth a schedule for the parties to file a trial statement listing witnesses and exhibits expected to be presented at the hearing.

Trial Ct. Op., 6/1/20, at 3-4 (paragraph break added).

_____

Our review of the UTPCPL and relevant decisional law reveals no such authority, for the principle that a UTPCPL claim may not be presented to a jury. Indeed, several decisions by this Court have implicitly approved — by not addressing the propriety of — the presentation of a UTPCPL claim to the jury. *See, e.g. Berg v. Nationwide Mut. Ins. Co.*, 189 A.3d 1030, 1034 (Pa. Super. 2018) (jury found UTPCPL violation, but this Court vacated trial court's finding of bad faith), *appeal granted in part and affirmed on other grounds*, 235 A.3d 1223 (Pa. 2020) (plurality); *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 149 (Pa. Super. 2012) (affirming jury finding of UTPCPL violation); *Neal v. Bavarian Motors, Inc*., 882 A.2d 1022, 1032 (Pa. Super. 2005) (affirming jury finding of UTPCPL violation, but remanding for trial court to recalculate award of attorneys' fees). Nevertheless, neither party has challenged the bifurcated nature of the trial.

4 *See* 73 P.S. § 201-2(4)(xv) ("[k]nowingly misrepresenting that services, replacements or repairs are needed if they are not needed"), (xxi) ("[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding").

On May 30, 2019 — after the trial court found Appellant violated the UTPCPL and had scheduled a hearing on attorneys' fees — Appellant filed a praecipe to enter judgment on the jury's verdict as follows:

> $3,500.00
> Money for concrete
> Legal fees for 4 years
> Punitive damages $5000
>
> Total Judgment Amount $8,500.00

Appellant's Praecipe for Entry of Judgment, 5/30/19.

On the same day, Appellant also filed a post-trial motion, claiming: (1) "the issue of attorney[s'] fees was already before the jury;" (2) "4 years of attorney[s'] fees were awarded by the jury and were plainly and clearly part of the verdict;" and thus (3) Appellees should "not get two bites at the apple, one in front of the jury and another in front of the Court, to prove their legal fees." Appellant's Motion for Post-Trial Relief, 5/30/19, at 2 (unpaginated.) Appellant also argued the trial court erred, with respect to the UPTCPL claims, in awarding both damages **and** treble damages, essentially quadrupling the damages award. *See id.*

The trial court did not initially rule on Appellant's post-trial motion. In response to the court's May 23, 2019, order, both parties filed witness lists and exhibits in preparation for the hearing on attorneys' fees.

On June 7, 2019, Appellant filed a motion *in limine* to preclude any exhibits or testimony not listed in Appellees' pre-trial statements that preceded the **jury** trial on the non-UTPCPL claims. The motion further argued,

again, that because "legal fees have already been awarded by the Jury for the [4] years the case has been pending, which includes all legal fees incurred, no additional legal fees can be awarded."  Appellant's Motion *in Limine*, 6/7/19, at 3 (unpaginated).  On the same day, the trial court conducted the hearing on attorneys' fees.  It first heard argument on, and denied, Appellant's motion *in limine*.  N.T., 6/7/19, at 4-11.

> The trial court summarized the evidence presented:
>
> [Appellees] presented attorneys' bills in the amount of $107,687.00 plus costs of $4,898.24.  Four attorneys worked on the case [on] behalf of [Appellees] at various times.  Except for [5] hours of research submitted by [one attorney], the time sheets do not differentiate between cause of action, or between UTPCPL claims and non-UTPCPL claims.
>
> The hourly rates charged by the [four] attorneys were [$550, $350, $325, and $200.  Appellees'] counsel took this case on a contingency fee bas[i]s.

Trial Ct. Op., 6/1/20, at 4.

On July 18, 2019, the trial court issued an opinion and order, awarding Appellees UTPCPL attorneys' fees of $85,000, which amounted to ten times the jury's award of $8,500.  Opin. & Order (Trial Ct. Op.), 7/18/19, at 7-8. The court also awarded $4,265.46 in costs.[5]  In so holding, the court rejected Appellant's claim that any UTPCPL attorneys' fees were improper because the jury had already awarded attorneys' fees and the jury's verdict had been

---

[5] As we will discuss in detail **infra**, this order did not award any punitive damages.

reduced to judgment. The court reasoned: (1) the UTPCPL claims were separate from the non-UTPCPL claims before the jury; and (2) in any event, the jury's alleged award of attorneys' fees, without any dollar amount, could not "be quantified." *Id.* at 2-3.

Appellant timely filed a second post-trial motion, again arguing UTPCPL attorneys' fees were barred by the jury's verdict, which already awarded attorneys' fees.[6] On November 27, 2019, the court granted the motion in part, agreeing that it had erroneously awarded damages **and** treble damages — essentially quadrupling the damages. The court thus modified the award to merely treble damages, utilizing Appellant's figure of $10,500, and reiterated it was awarding $89,264.46 in attorneys' fees. Trial Ct. Op., 11/27/19, at 12.[7] The court also stated, apparently for the first time, that it was also awarding punitive damages of $5,000. **See id.** at 12.

On December 30, 2019, Appellees filed a praecipe to enter judgment their favor, based on the November 27, 2019, for $104,765.46. This sum

---

[6] The trial docket indicates the court scheduled a hearing on this motion to be held on September 19, 2019, and the court's November 27, 2019, opinion and order states the court considered the parties' "arguments." Trial Ct. Docket, at 6; Opin. & Order (Trial Ct. Op.), 11/27/19, at 1. However, the certified record transmitted on appeal does not include the notes of testimony for such a proceeding.

[7] The court's November 27, 2019, order appears as page 12 of the November 27, 2019, opinion.

represented: $10,500 damages, $5,000 punitive damages, and $89,265.46 in attorneys' fees and costs. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[8]

## II. Statement of Questions Involved

Appellant presents four issues for our review:

I. Did the Lower Court err in awarding attorney's fees to [Appellees] when the Jury had already awarded the same attorney's fees and the Jury Verdict had been reduced to Judgment.

II. Did the Lower Court misapply the factors set forth in *Sewak v. Lockhart*, 699 A.2d. 755 (Pa. Super. 1997) to the facts of this case.

III. Did the lower Court err in permitting [Appellees] to introduce evidence of timesheet summaries and testimony by witnesses concerning legal fees when [Appellees] failed to include the timesheet summaries as an Exhibit in their Pretrial Statement and did not list any witness to testify about them in their Pretrial Statement.

IV. Did the award of legal fees amount to an illegal windfall or bonanza to [Appellees] and their attorneys?

_____

[8] Appellant's Rule 1925(b) statement: is five pages in length; contains two and one-half pages of procedural history; and presents 12 numbered paragraphs of alleging court error. On appeal, Appellant raises four numbered issues. We remind counsel of Pa.R.A.P. 1925(b)(4):

   (i) The Statement shall set forth only those errors that the appellant intends to assert.

   (ii) The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge. . . .

*See* Pa.R.A.P. 1925(b)(4)(i)-(ii).

Appellant's Brief at 5. All of Appellant's claims go to the trial court's award of attorney fees to Appellees under the UTPCPL, and many of Appellant's discrete arguments appear under more than one claim.

### III. Standard of Review and General UTPCPL Principles

We first note the relevant standard of review and guiding principles. This Court has explained:

> "Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law."
>
>> The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.
>
> Additionally, "the trial court, as factfinder, is free to believe all, part or none of the evidence presented . . .." "[T]herefore, assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder."

*Sovereign Bank v. Ganter*, 914 A.2d 415, 420 (Pa. Super. 2006) (citations omitted).

We examine an award under the UPTCPL for abuse of discretion. *Krishnan*, 171 A.3d at 872.

> The UTPCPL is Pennsylvania's consumer protection law. It seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce . . .." 73 P.S. § 201-3. Its aim is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection.

*Richards v. Ameriprise Fin., Inc*., 152 A.3d 1027, 1034-35 (Pa. Super. 2016) (some citations omitted).

Section 201-9.2(a) of the UTPCPL provides, in pertinent part:

The court may, in its discretion, award up to three times the actual damages sustained, but not less than [$100], and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and **reasonable attorney fees**.

73 P.S. § 201-9.2 (emphasis added).

### IV. Claim that Jury Already Awarded Attorneys' Fees

In its first issue, Appellant asserts the trial court erred in awarding attorneys' fees to Appellees, as the award resulted in an improper double recovery. In support, Appellant maintains: Appellees' complaint requested attorneys' fees; Appellees' counsel acknowledged they could not distinguish the time devoted to the UTPCPL claims from the time spent on the non-UTPCPL claims; the jury's verdict included "legal fees for [4] years;" the jury "verdict was reduced to judgment;" and Appellees did not object to the verdict or file a post-trial motion. *See* Appellant's Brief at 21-22 (capitalization removed); *see also id.* at 28-29 (Appellees "have waived any argument . . . concerning the Jury Verdict by their failure to timely object"). On these bases, Appellant

- 10 -

further reasons the court's award of attorneys' fees violates *res judicata* and collateral estoppel.[9]  *Id.* at 22, 31, 33.  No relief is due.

We first note the trial court reasoned:

> **The jury's notation [of "legal fees"] without a dollar amount was gratuitous and not enforceable.**  Neither party objected when the jury's verdict was announced.  In his closing, [Appellees'] counsel did not even ask the jury for an award of attorneys' fees.  Throughout this case, **it was obvious to all that the attorneys' fees would be requested and presented if a violation of the UTPCPL was found.**  The fact that [Appellant] reduced the jury's verdict to judgment has no consequence.  The case was not completed.  The judgment was NOT a final judgment as [the] UTPCPL claim remained outstanding.  No abuse of discretion was present.

Trial Ct. Op., 6/1/20, at 6 (emphases added and record citations omitted).

The crux of Appellant's argument is that the jury's verdict included all of the attorneys' fees that could be awarded in this matter.  However, Appellant does not refute that "[t]hroughout this case, it was obvious to all that the attorneys' fees would be requested and presented if a violation of the UTPCPL was found."  *See* Trial Ct. Op., 6/1/20, at 6.  As Appellant acquiesced to the bifurcated nature of trial, we conclude it waived any challenge to the

---

[9] *See Garman v. Angino*, 230 A.3d 1246, 1252 (Pa. Super. 2020) ("[R]es judicata precludes an action where the former and latter suits possess the following common elements: (1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued."), 1255 ("Collateral estoppel is 'a broader concept' than *res judicata*, and 'operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being re-litigated in a subsequent suit.'") (citation omitted).

mere fact that the trial court would separately consider the issue of UTPCPL attorneys' fees. Appellant's repeatedly cited premise, that UTPCPL attorneys' fees were already decided by the jury, ignores that the issue of UTPCPL attorneys' fees would be decided after — and regardless of how — the jury ruled on the non-UTPCPL claims.

We thus further agree with the trial court's finding that the jury did not — despite its verdict slip's notation of "legal fees for 4 years" — in fact award any attorneys' fees. *See* Verdict & Interrogatories to Jury at 2; Trial Ct. Op., 6/1/20, at 12 ("The [c]ourt found that the jury's award of attorney[s'] fees was meaningless and did not direct them to deliberate and determine a monetary amount or ask them to explain."). Rather than address this reasoning, Appellant simply reiterates the jury **did** award attorneys' fees.

Finally, Appellant's repeated insistence that the jury verdict "was reduced to judgment" is self-serving. *See* Appellant's Brief at 21. The trial court repeatedly stated that while the jury's reference to "legal fees" reflected a belief that Appellant committed fraud and that Appellees should be made whole, there was no binding, actual award of attorneys' fees, where no such evidence was presented to the jury and no such award is allowed under the law. The trial court also pointed out that **after** it had found Appellant violated the UTPCPL and scheduled a hearing on attorneys' fees, Appellant strategically and prematurely entered praceipe on the jury award, in order to avoid a hearing on the UTPCPL attorneys' fees. Such praecipe was improper because

- 12 -

it was clear that the UTPCPL claims remained outstanding. Indeed, Appellant filed a witness list in preparation for the attorneys' fees hearing. Appellant's particular phrasing, that judgment "was entered," removes itself from this litigation gamesmanship.

As Appellant's first issue is premised on its mistaken claim that the jury had deliberated on, and awarded, all of the possible attorneys' fees in this case, we conclude that no relief is due. For the same reasons, we reject its claim that the instant attorneys' fees award was barred by *res judicata* and collateral estoppel.

## V. *Sewak* Factors

Next, Appellant avers the trial court misapplied the factors of **Sewak**, 699 A.2d 755,[10] that are to be considered when assessing the reasonableness of counsel fees under the UTPCPL. For ease of review, we first note the relevant law and the trial court's findings on this issue:

> We have stated that "a court in awarding attorney[s'] fees under the UTPCPL must . . . eliminate from the award of attorney[s'] fees the efforts of counsel to recover on non-UTPCPL theories." Simply put, "there is no statutory authority for awarding attorney[s'] fees for the time spent pursuing non-UTPCPL counts."

**See Krishnan**, 171 A.3d at 871 (citations omitted).

_____

[10] We note the 1997 decision of **Sewak** was abrogated on other grounds, not implicated in this appeal. **See Milliken v. Jacono**, 60 A.3d 133, 142 (Pa. Super. 2012) (discussing the UTPCPL's "catch-all" provision at 73 P.S. § 201-2(4)(xxi)).

- 13 -

J-S55023-20

> [T]he following factors should be considered when assessing the reasonableness of counsel fees:
>
> > (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the clients from the services; and (4) The contingency or certainty of the compensation.[11]

*Id.* at 900 (citations omitted).

Here, the trial court set forth and considered the *Sewak* factors. *See* Trial Ct. Op., 7/18/19, at 6-7. First, it found:

> [T]he amount involved in the controversy was modest, under the arbitration limits of $50,000. . . . The case itself was somewhat complex. At first blush, the issues seemed straightforward: what did [Appellant] do and say that was fraudulent and/or misleading? Determining the damages to [Appellees] was not difficult to ascertain or quantify . . . . However, to properly pursue this case, uncovering a pattern of deception was critical and to do so required extensive discovery, depositions, and investigation of other claims made against [Appellant] both in Pennsylvania and Ohio. The theories supporting a claim for deceptive practices, not just with [Appellees] but with other public consumers, required skillful and comprehensive legal acumen.

*Id.* at 6.

With respect to the second *Sewak* factor — "[t]he customary charges of the members of the bar for similar services" — the trial court found the hourly rates of Appellees' attorneys "were customary." *See Krishnan*, 171

---

[11] These are the same factors set forth in *Sewak*. *See Sewak*, 699 A.2d at 762.

A.3d at 900; Trial Ct. Op., 7/18/19, at 6. The court noted that although Attorney Paul Tershel's rate of $550 was "on the higher side of a usual and customary rate," he was "regarded as a highly skilled litigator with numerous multi-million dollar verdicts . . . and the Court accepted his testimony as true that he charges and receives that fee in other cases." Trial Ct. Op., 7/18/19, at 6.

The third and fourth **Sewak** factors are "[t]he amount involved in the controversy and the benefits resulting to the clients from the services" and "[t]he contingency or certainty of the compensation." **Krishnan**, 171 A.3d at 900. The court found "the amount involved in the controversy was modest, under the arbitration limits of $50,000." Trial Ct. Op., 7/18/19, at 6. The court further reasoned,

> In a case like this, with [a jury] award of $8,500, the contingency fee would provide the attorney with $3,400 of attorneys' fees and the harmed consumer would receive $5,100. The legislature, in adopting the UTPCPL, clearly wanted to shift the fees to effectuate a deterrence factor. The attorneys' fee provision under the UPTCPL encourages experienced attorneys with the corresponding higher rates to take on a case which ultimately may result in the attorneys' fee being greater than the harm done to one consumer[.] However, the protection of the public is accomplished and that cost is placed on the wrongdoer.

*Id.* at 7.

Appellant argues the following. The trial court recognized the instant case was not novel or difficult, and that the amount in controversy was modest. Appellant's Brief at 35-36. This case merely "involved a misrepresentation by [Appellant's] salesman which cost [Appellees]

- 15 -

$3,500.00." *Id.* at 37. The trial court also "erred in basing its decision to award $550.00 per hour to Attorney Terschel on evidence not in the record. There was no testimony or evidence about any 'multi-million dollar verdicts' at either trial." *Id.* at 36. Furthermore, when asked whether "the Court award[ed him] $550 an hour in legal fees in federal court," Attorney Terschel replied "not yet." *Id.* (record citation omitted). We conclude these arguments are meritless.

First, Appellant selectively cites portions of the trial court's opinions, omitting both the context in which they were made and the surrounding analysis that is unfavorable to Appellant's position. In claiming the court "recognized . . . that the case was not novel or difficult and that the amount in controversy was modest," Appellant wholly ignores the court's discussion that although "[a]t first blush, the issues seem straightforward," Appellees' "uncovering a pattern of deception was critical and . . . required extensive discovery, depositions, and investigation of other claims" against Appellant. *See* Appellant's Brief at 35-36; Trial Ct. Op., 7/18/19, at 6. Additionally, Appellant's challenge to the court's credibility findings, with respect to Attorney Terschel's hourly rate, is unavailing. The trial court found his $550 rate was "on the higher side of a usual and customary rate" but "accepted his testimony as true that he charges and receives that fee in other cases." Trial Ct. Op., 7/18/19, at 6. The court was free to believe all, part, or none of the evidence, and on appeal, this Court "is not permitted to reexamine the weight

- 16 -

and credibility determinations or substitute our judgment for that of the factfinder." ***See Sovereign Bank***, 914 A.2d at 420 (citation omitted).

## VI. Denial of Appellant's Motion *in Limine*

In its third issue, Appellant argues the trial "[c]ourt erred in permitting [Appellees] to introduce timesheet summaries and testimony . . . concerning legal fees when [Appellees] failed to include the timesheet summaries [and these witnesses] in their Pretrial Statement." Appellant's Brief at 39. Appellant's basis for this contention is the fact that, at the jury trial, the court precluded Appellant from calling Joe Kijowski as a witness because this witness was not listed in Appellant's pretrial statement or witness list. Appellant extrapolates this ruling as "the law of the case," and avers the court's failure to apply it equally to Appellant was unreasonable and biased. *Id.* at 42. Appellant concludes that "it is only fair to hold both parties to the same standard," and the court's failure to do so resulted in a "trial by ambush and . . . surprise." *Id.* at 42-43. Additionally, Appellant contends the court erred in precluding evidence of settlement negotiations prior to the jury trial. *Id.* at 44-45. Appellant argues an "analysis of the reasonableness of the attorney[s'] fees must include the amount which [Appellees] could have obtained without the necessity of a Jury Trial." *Id.* at 45. In support, it points out the jury's verdict "was $2,000.00 more than the amount offered by [Appellant] at a Mediation Conference two" years earlier, and Robert Beall, the proprietor of Appellant, "was prepared to testify that he would have

- 17 -

offered $15,000.00 prior to" trial." ***Id.*** at 45. Appellant asserts this evidence

"would have [shown] the folly of [Appellees'] decision to proceed with . . .

[t]rial when [Appellees] would have been better served had they negotiated,

in good faith, for a settlement." ***Id.*** We conclude no relief is due.

We note the relevant standard of review:

> "When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." Further, "for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. A party suffers prejudice when the trial court's error could have affected the verdict."

***Krishnan***, 171 A.3d at 897 n.28 (citations omitted).

Appellant again ignores the trial court's straightforward discussion of its

claim that Appellees' timesheets and witnesses should be precluded pursuant

to the court's "similar" ruling as to the witness Kijowski. At the June 7, 2019,

hearing on the UTPCPL claim, the trial court responded to Appellant's

argument as follows:

> I think you are comparing apples to oranges. The fact is [Appellees' counsel] was required to list a pretrial statement for this hearing today and he's done that. And if he wants to call someone that's not on that pretrial statement, then your argument would hold water. This was a separate proceeding after the Court determined there was an Unfair Trade Practices violation.

N.T., 6/7/19, at 11. The court further explained in its opinion:

> At the [jury] trial, Mr. Kijowski was not included in the [jury] trial's witness list and that was one of the court's bases for the preclusion of his testimony. For the attorneys' fees hearing, a list of

witnesses for the hearing was submitted as required by the Court and no witnesses not on the list testified. The rulings are not inconsistent.

Trial Ct. Op., 7/18/19, at 2. Appellant's present argument omits this distinction — pointed out by the trial court — between the pre-trial statements and witness lists for the **jury** trial and the **UPTCPL** attorneys' fee hearing. Appellant also fails to address the court's finding that all of Appellees' witnesses at the UTPCPL hearing were included in their pre-trial statements for that proceeding.

With respect to Appellant's challenge to the preclusion of evidence relating to pre-trial settlement negotiations, we note that at the UPTCPL hearing, Appellant attempted to cross-examine Jarrod Takah, one of Appellee's attorneys, about a prior settlement offer of $6,500 in this case. N.T., 6/7/19, at 50. Appellees objected on the ground it was not relevant, and the trial court sustained the objection. *Id.*

We note that generally, "[a]ll relevant evidence is admissible[.] Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). Additionally:

> It has long been established that an offer to compromise a claim, not accepted, cannot be introduced into evidence. Not only is settlement without litigation to be encouraged, but offers to compromise are not, in and of themselves, admissions of liability. To consider such a factor when determining the possible excessiveness of a verdict discourages the settlement of disputes.

> Plaintiffs will be dissuaded from making conservative settlement demands if they know that such demands will be used against them at a later stage in the proceedings.

*Beswick v. Maguire*, 748 A.2d 701, 706 (Pa. Super. 2000) (citations omitted).

We decline to find an abuse of discretion in the trial court's preclusion of evidence concerning prior settlement negotiations between the parties. *See Krishnan*, 171 A.3d at 897 n.28. Appellant provides no legal authority for its contention that the assessment of the reasonableness of attorneys' fees, under the UPTCPL, must include the amount which Appellees could have obtained without proceeding to trial. Appellant's cited figures for its alleged prior settlement offers — $2,000 less than the jury verdict and $15,000 — are both less than Appellees' total, non-attorneys' fees and costs-award. The jury awarded $8,500, while the trial court awarded UTPCPL damages of $10,500, for a sum of $19,000. Appellant does not explain why Appellees' lost potential to receive less in settlement is relevant to the reasonableness of attorneys' fees under the UTPCPL. For the foregoing reasons, no relief is due on Appellant's evidentiary challenges.

## VII. Claim that Attorneys' Fees Award was a Windfall

Appellant's final claim is that the award of attorneys' fees and costs was an illegal windfall or bonanza to Appellees. Appellant emphasizes the fee agreement between Appellees and their counsel was that Appellees would receive 50% "of all that is received or recovered" in this matter. Appellant's

Brief at 46. Appellant then calculates that where the jury's total verdict was $8,500 and the trial court's "total Verdict amount [was] $15,500" (aside from attorneys' fees), Appellees and their counsel should have each received $7,750. *Id.* at 47. However, the addition of the $85,000 attorneys' fees increases the total verdict to $100,500, which would be split equally, or $50,250 each to Appellees and their attorneys. *Id.* Appellant maintains this amount is more than three times the total damages awarded to them by the jury and the trial court. *Id.* at 47-48.

At this juncture, we also consider the following arguments presented throughout Appellant's brief, which go to the amount of the attorneys' fees award: Appellees' counsel failed "to separate the time devoted to the UTPCPL claim from the time devoted to the other [3] counts[,] for which the Jury already awarded attorney[s'] fees." Appellant's Brief at 21. Thus, the court erred in not "eliminat[ing] from its award of attorneys' fees those efforts made to recover on the non UTPCPL theories." *Id.* at 25. The attorneys' fee award of $85,000 was not proportional to either the jury's award or the UTPCPL treble damages award of $10,500. *Id.* at 23, 38-39.

The trial court addressed these issues:

> The Court found the testimony of [Appellees' counsel,] Attorney Takah[,] to be credible; he testified that the attorneys utilizing their hourly rate spent over $107,000 in this case. While shocking at first blush, a review of the record supports this conclusion. Numerous motions and petitions were filed. Extensive discovery was undertaken. Through the diligence of [Appellees'] counsel, a case in which the Ohio Attorney General's Office uncovered numerous instances of fraudulent and deceptive

practices of Mr. Rooter of Ohio, owned by the same person who owns [Appellant], was discovered.

Trial Ct. Op., 6/1/20, at 8 (record citations omitted).

> The Court found that the skill and legal acumen needed to pursue a claim of deceptive business practices was significant. Much of the evidence against [Appellant] was unknown to [Appellees] and not disclosed by [Appellant] and required creative and intensive pursuit of the information through consumer protection agencies in Pennsylvania and Ohio. [Appellees' attorneys] discovered [Appellant's] employees' criminal history[12] and had to engage and prepare an expert in plumbing. The court found the skill was commensurate to the fees. . . .
>
>                       * * *
>
> . . . In summary, in reviewing the evidence in a light most favorable to the verdict winner, the evidence clearly established that the attorneys worked the hours that they claimed. A review of this voluminous file supported their claim.

*Id.* at 13.

The trial court also rejected Appellant's claim that the attorneys' fees awarded were disproportionate:

> It appears [Appellant] is not questioning . . . the hours spent by [Appellees'] counsel . . . but rather asserts that the proportionality of the attorneys' fees to the actual damages is not

---

[12] The trial court explained:

> [During discovery, Appellees] learned that [Appellant's] employee in charge of their project and with whom all contact had occurred had an extensive past criminal history involving dishonesty and at the time of the trial, he was unavailable to testify as he was in [prison] for a recent conviction of deceptive business practices not involving [Appellant].

Trial Ct. Op., 6/1/20, at 2-3.

reasonable. [Appellant] ignores the purpose of the UTPCPL[,] to protect the public from unfair or deceptive business practices. The underlying foundation of the statute is fraud prevention. A primary goal of the Act is to serve as a deterrence to businesses from engaging in fraudulent practices. " . . . If the Court permits the (Defendant) simply to repay what is owed to the consumer under the fraud-induced contract, the deterrence value of the (UTPCPL) is weakened, if not lost entirely. We cannot accept such an evisceration of the statutory goals." [**Agliori v. Metro. Life Ins. Co.**, 879 A.2d 315, 322 (Pa. Super. 2005).]

The amount of $85,000.00, ten times the [jury's] award, is still $22,000.00 less than what [Appellees'] counsel spent using their time and rate submitted. [Appellant] lied to [Appellees] and took advantage of them. [Appellant] again mentions that the jury already awarded attorneys' fees. The jury was not asked to award attorneys' fees by [Appellees] but yet the jury felt compelled to do so; the evidence of deceptive practice was cogently clear and obvious to the jury. The award of attorneys' fees is necessary to encourage a well established law firm to take a case such as this, to protect unassuming consumers. Based on all of the evidence in the case, an award of $85,000.00 in attorneys' fees was reasonable and not an abuse of discretion.

Trial Ct. Op., 6/1/20, at 8-9 (some citations omitted).

Viewing the evidence in the light most favorable to Appellees, we do not find any abuse of discretion or error of law. **See Krishnan**, 171 A.3d at 872; **Sovereign Bank**, 914 A.2d at 420. As discussed above, we do not disturb the trial court's credibility findings as to Appellees' attorneys' hourly rates. **See Sovereign Bank**, 914 A.2d at 420. Significantly, the trial court acknowledged the attorneys' presentation of $107,000 of fees was "shocking at first blush," but the court reviewed the record and observed the instant litigation involved "[n]umerous motions and petitions," "[e]xtensive discovery," and particularly "the skill and legal acumen needed to pursue a

claim of deceptive business practices." Trial Ct. Op., 6/1/20, at 8, 13. Additionally, omitted from Appellant's arguments is any acknowledgment of the legislative policy of the UPTCPL. The trial court pointed out: "The jury was not asked to award attorneys' fees by [Appellees] but yet [it] felt compelled to do so; the evidence of deceptive practice was cogently clear and obvious to the jury[;]" "a large plumbing company that does extensive advertising that it unclogs pipes for $99.00 tricked and duped [Appellees], an elderly couple with no plumbing expertise, into spending [35] times that [they] should have[;]" and "[t]he litigation not only benefitted [Appellees], but also the public in that a message was sent to [Appellant] that its practices were fraudulent or deceptive and would not be tolerated." *Id.* at 9, 13, 14. The trial court properly considered the UTPCPL statutory provision and legislative intent, the facts of this matter, the work required by Appellees' attorneys in litigating these issues, and the contrast between the court's finding of UTPCPL damages of $3,405 and the attorneys' evidence of their $107,000 fees — which the court found. The court has provided support for its decision to award $85,000 in attorneys' fees.

## VI.  Trial Court's UTPCPL Treble and Punitive Damages Awards

For the foregoing reasons, we conclude none of Appellant's issues merit relief. Nevertheless, we point out two aspects of the court's UTPCPL award.

First, as stated above, on May 23, 2019, the trial court awarded UPTCPL damages of $3,405, and correctly trebled these damages to an amount of

$10,215.[13]  The argument in Appellant's first post-trial motion, however, mistakenly referred to the **jury's** award of $3,500, and argued trebling that sum would amount to $10,500.  **See** Appellant's Motion for Post-Trial Relief at 2 ("If the Court desired to award treble damages, the **jury** verdict should have been trebled [for a total of] $10,500.") (emphasis added).  On November 27, 2019, the court agreed that it should have only trebled — not quadrupled — the damages and thus modified the award to that requested by Appellant — $10,500.

We also point out that punitive damages were **not** included in either the trial court's initial, May 23, 2019, UTPCPL award or its July 18, 2019, UPTPCL attorneys' fees award.  However, in its November 27, 2019, order (granting in part and denying in part Appellant's post-trial motions), the court did include an award of $5,000 UTPCPL punitive damages.

Appellees' December 30, 2019, praecipe to enter the UTPCPL judgment included both of these sums:  the $10,500 trebled damages and the $5,000 punitive damages (in addition to the $89,265.46 in attorneys' fees and costs, for a total of $104,765.46).  Appellees' Preacipe for Entry of Judgment, 12/30/19.  This UPTCPL $5,000 punitive damages award is distinct from the jury's award of $5,000 punitive damages.

---

[13] The trial court later acknowledged it mistakenly awarded both damages **and** treble damages, in effect quadrupling the award.  Trial Ct. Op., 11/27/19, at 3.

Appellant does not present any challenge to this calculation of trebled damages, nor to the award of $5,000 UTPCPL punitive damages. Indeed, its argument acknowledges the entry of these sums without dispute. *See* Appellant's Brief at 37 ("The total amount of damages awarded in the case, when proper treble damages, compensatory damages **and punitive damages** are included, amounts to $15,500.00 . . . .") (emphasis added). In the absence of any challenge to these figures, by either party, we do not disturb the calculation of the $10,500 UPTCPL treble damages nor the entry of $5,000 UPTCPL punitive damages.

## VII.  Conclusion

As Appellant presents no challenge to the jury's verdict on negligence, fraudulent misrepresentation, and breach of contract,[14] we affirm the jury's award of $8,500 (representing $3,500 damages and $5,000 punitive damages). We also affirm the trial court's verdict on the UTPCPL claims and UTPCPL award of $104,765.46 (representing $10,500 treble damages, $89,265.46 in attorneys' fees and costs, and $5,000 punitive damages.)

As the two judgments were entered on separate praecipes seven months apart, for clarity we remand to the trial court to amend the December 30, 2019, judgment to include both the non-UTPCPL and UTPCPL verdicts.

---

[14] As stated above, the jury found Appellant not liable for breach of contract.

- 26 -

Verdict affirmed. Judgment remanded to trial court with instructions. Jurisdiction relinquished.

Judge Colins joins the Memorandum.

Judge Bowes Concurs in the Result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2021